### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.  No.  CR 04-2346 MV

JUAN ZAPATA-TREVIÑO,

    Defendant.

### MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Defendant Juan Zapata-Treviño's *Objections to the Presentence Report and Sentencing Memorandum*, filed February 25, 2005 **[Doc. No. 16]**.  The Court, having considered the motion, briefs, relevant law and being otherwise fully informed, ruled at the sentencing hearing that the Defendant's advisory Guidelines sentence would be reduced pursuant to *Booker v. United States*, 543 U.S. ____, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).  The Court now sets forth the basis for its prior ruling in this Memorandum Opinion.

### BACKGROUND

On August 29, 2004, United States Border Patrol agents encountered Defendant at a checkpoint near Alamogordo.  Defendant presented the agents with a Resident Alien Card of another person and admitted he had purchased it in Juarez, Mexico.  He then admitted that he was a citizen and national of Mexico.  During processing at the Border Patrol Station, the identification system revealed that Defendant previously had been deported to Mexico on December 30, 2003 for a misdemeanor sexual contact conviction in Colorado.

Defendant pleaded guilty to a Information charging him as follows:

>On or about the 29th of August, 2004, the defendant, JUAN ZAPATA-TREVIÑO, an alien, was found in Otero County, in the State and District of New Mexico, contrary to law in that the defendant had been convicted of an aggravated felony as defined in 8 U.S.C. § 1101(a)(43), that being Sexual Contact, and thereafter had been deported, excluded and removed and departed the United States on or about December 30, 2003, while an Order of Exclusion, Deportation and Removal was outstanding, and the said defendant had not obtained the consent of the Attorney General of the United States or his successor, the Secretary for Homeland Security, pursuant to 6 U.S.C. §§ 202(3), 202(4) and 557, for reapplication by the defendant for admission into the United States.
>
>In violation of 8 U.S.C. §§ 1326(a)(1) and (2), and 8 U.S.C. § 1326(b)(2).

The Court held Defendant's sentencing hearing on May 25, 2005. At its conclusion, the Court determined Defendant's case merited a sentence outside the advisory Guidelines range pursuant to *Booker*.

## DISCUSSION

### I.   The Impact of *Booker* on Federal Court Sentencing

The *Booker* decision has changed the landscape of federal court sentencing in important ways. In *Booker*, the Supreme Court held that the Federal Sentencing Guidelines ("Guidelines") violated the Sixth Amendment. To remedy the constitutional problem, the Court excised 18 U.S.C. § 3553(b)(1), the provision of the Sentencing Reform Act ("SRA") that made the Guidelines mandatory, along with the appellate review provisions of 18 U.S.C. § 3742(e) and any cross-references to section § 3553(b)(1). Under the new advisory Guidelines scheme, "district courts have a freer hand in determining sentences." *United States v. Trujillo-Terrazas*, 405 F.3d 814, 819 (10th Cir. 2005). Thus, "while the Guidelines still exert gravitational pull on all sentencing decisions ... district courts now have more discretion to tailor sentences to the

individual circumstances of a defendant." *Id*. Further, the sentencing factors set forth in § 3553(a), "which the mandatory application of the Guidelines made dormant, have a new vitality in channeling the exercise of sentencing discretion." *Id*.

After *Booker*, the guideline range is thus only one of many factors that a sentencing judge must consider in determining an appropriate individualized sentence. Specifically, a sentencing judge must also consider the provisions of 18 U.S.C. § 3553(a). The overriding principle and basic mandate of that section requires district courts to impose a sentence "sufficient, but not greater than necessary," to comply with the four purposes of sentencing set forth in § 3553(a)(2). Those purposes are:

> (a) retribution (to reflect the seriousness of the offense, to promote respect for the law, and to provide "just punishment");
> (b) deterrence;
> (c) incapacitation ("to protect the public from further crimes"); and
> (d) rehabilitation ("to provide the defendant with needed education or vocational training, medical care, or other correctional treatment in the most effective manner").

18 U.S.C. § 3553(a)(2)(A)-(D).

In determining the sentence minimally sufficient to comply with § 3553(a)(2)'s purposes of sentencing, the court also must also consider the following factors: (1) "the nature and the circumstances of the offense and the history and characteristics of the defendant"; (2) "the kinds of sentences available"; (3) the guidelines and policy statements issued by the Sentencing Commission, including the advisory guideline range; (4) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (5) the need to provide restitution where applicable. 18 U.S.C. § 3553(a).

## II.     Advisory Guidelines Range

The Court's first step in imposition of sentence after *Booker* is establishing the appropriate advisory Guidelines range.  *See United States v. Hughes*, 396 F.3d 374, 381 (4th Cir. 2005).  In the instant case, the PSR assigned Defendant a base offense level of eight pursuant to the United States Sentencing Guidelines Manual ("U.S.S.G.") § 2L1.2(a).  The PSR also assigned a sixteen-level enhancement pursuant to § 2L1.2(b)(1)(A) for deportation after a conviction for a felony crime of violence.  With this enhancement, the PSR calculated the adjusted offense level at twenty-four.  Crediting Defendant a three-level adjustment for acceptance of responsibility, the PSR's calculation of Defendant's total offense level was twenty-one. This resulted in an advisory guidelines range of forty-one to fifty-one months.

In his Sentencing Memorandums and at the sentencing hearing, Defendant argued that imposition of the sixteen-level enhancement was not warranted for several reasons.  First, Defendant argued that his enhancing crime – sexual contact – was not a "crime of violence" for purposes of U.S.S.G. § 2L1.2.  Second, Defendant argued that even if the enhancing crime technically was a "crime of violence," the Court had discretion to grant him a reduced sentence based on the facts of the underlying conviction.  Finally, Defendant argued that cultural differences and criminal history overrepresentation mitigated in favor of a reduced sentence.  At the sentencing hearing, the Court rejected Defendant's cultural and overrepresentation arguments. In addition, the Court found that the sixteen-level enhancement was applied correctly and that the appropriate advisory Guidelines range was forty-one to fifty-one months. Thus, in this opinion, the Court only will address its reasons for granting Defendant a reduced sentence under *Booker*.

## III.   Based on considerations set forth in 18 U.S.C. § 3553(a) and *Booker*, Defendant merits a non-Guidelines sentence

After *Booker*, the Court has increased discretion to consider a defendant's individual circumstances in tailoring a reasonable sentence. Furthermore, after *Booker*, it is the district court's duty to consider the various sentencing factors set forth in 18 U.S.C. § 3553(a). In the instant case, these considerations dictate that a non-Guidelines sentence is appropriate.

### A.   The sixteen-level enhancement does not promote uniformity in sentencing

In sentencing defendants, the Court strives to achieve uniformity. This goal, "ensuring similar sentences for those who have committed similar crimes in similar ways" and ensuring a match between "sentences and real conduct" often is highlighted by federal courts and the Sentencing Commission in discussions about the central utility of the Guidelines. *See Booker*, 125 S. Ct. at 760; *United States v. Wilson*, 355 F. Supp. 2d 1269, 1284 (D. Utah 2005) (the Congressional "command" to achieve uniformity is "one of the fundamental purposes underlying the Sentencing Reform Act"); 18 U.S.C. § 3553(a)(6) (the Guidelines seek "to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct").

Unfortunately, in certain instances, assignment of the sixteen-level enhancement pursuant to § 2L1.2 does not promote uniformity in sentencing as intended by the Guidelines. When the Guidelines first were formulated, the base offense level for immigration crimes was set at six, without a distinction for defendants previously convicted of a felony. *See* Robert J. McWhirter & Jon M. Sands, *Does the Punishment Fit the Crime? A Defense Perspective on Sentencing in Aggravated Felon Re-entry Cases*, 1996 WL 671556, at *1 (1996). Effective January 15, 1998,

the base offense level for re-entry offenses was raised two levels, to level eight. *See id.* Later, in 1998, the Guidelines "saw the first distinction" between sentencing defendants convicted of illegal re-entry and those convicted of illegal re-entry after deportation for a prior felony. *See id.* The former were assigned a base offense level of eight. The latter defendants, however, were assigned a four-level enhancement solely on the basis that they had been convicted of a felony in the past. *See id.* "The guidelines made clear that this punishment was in addition to, not in lieu of, a defendant's criminal history." *Id.*

Finally, on November 1, 1991, the Guidelines again changed to mandate a sixteen-level increase for all defendants previously deported as "aggravated felons." This "stark cliff" did not allow for a gradual increase to account for the varying severity of aggravated felonies. *Id.* at *2. "The Commission did no study to determine if such sentences were necessary-or desirable from any penal theory. Indeed, no research supports such a drastic upheaval. No Commission studies recommended such a high level, nor did any other known grounds warrant it." *Id.* In response to criticism, Amendment 632 changed the Guideline in 2001 by establishing "more graduated sentencing enhancement of between 8 levels and 16 levels, depending on the seriousness of the prior aggravated felony and the dangerousness of the defendant." U.S.S.G. supp. to app. C, amend. 632 (2001).

The current version of U.S.S.G. § 2L1.2 – unlawfully entering or remaining in the United States – assesses a sixteen-level enhancement "[i]f the defendant previously was deported, or unlawfully remained in the United States, after ... a conviction for a felony that is ... a crime of violence." Application Note 1(B)(iii) to § 2L1.2 defines a "crime of violence" for purposes of the sixteen-level enhancement as follows:

> "Crime of violence" means any of the following: murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, statutory rape, sexual abuse of a minor, robbery, arson, extortion, extortionate extension of credit, burglary of a dwelling, or any offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another.

"Felony" is defined as "any federal, state, or local offense punishable by imprisonment for a term exceeding one year." § 2L1.2, Application Note 1(B)(2).

Despite amendments, the sixteen-level enhancement continues to be at odds with the goals of uniformity and proportionality in certain circumstances. This is due, in part, to the wide range of felonies enumerated in § 2L1.2, as well as the section's broad "catchall" category, which includes, as crimes of violence, felonies that have, as an element, the use, attempted use, or threatened use of force. Further, the enhancement applies to offenses that are not felonies under state law. *See* U.S.S.G. § 2L1.2, Application Note 1(B)(2) (defining a felony for purposes of the section as "any federal, state, or local offense punishable by imprisonment for a term of exceeding one year"). Thus, as is true of the instant case, a defendant convicted in the past of a state misdemeanor that contemplates a term of imprisonment in excess of a year are assigned the same sixteen-level enhancement as a defendant who previously was convicted of murder or rape.

Because the Guidelines do not distinguish between crimes of violence that are more serious and those that are less serious, in the case of a less serious crime, courts have been critical of applying the mandatory sixteen-level enhancement. In *Trujillo-Terrazas*, the district court, while expressing serious reservations about imposing the sixteen-level enhancement in an illegal reentry case where the defendant had been convicted of a relatively minor arson offense, did so because the Guidelines required it. 405 F.3d at 817. At the sentencing hearing, the district court

sympathetically stated: "You know what? I don't want to send anybody to jail, and I wish I didn't have to ... I'm sorry, you know, under the circumstances, that I have to do what I have to do." *Id*. As the Tenth Circuit confirmed on appeal in *Trujillo-Terrazas*, a district court's obligations have changed since *Booker* rendered the Guidelines advisory.

The Tenth Circuit remanded Mr. Trujillo-Terrazas' case for resentencing pursuant to *Booker* "[t]o allow the mismatch between the sentence suggested by a principled application of the post-*Booker* sentencing framework and the actual sentence given to Mr. Trujillo[.]" *Id*. at 821. "Applying the sentencing factors listed in §3553(a) to Mr. Trujillo's case provides a strong indication that had the district court applied the *Booker* framework, his sentence would have been lower and this lower sentence would be reasonable." *Id*. at 819. In reaching this conclusion, the court highlighted the district court's voiced regret about imposing the mandatory Guidelines sentence and applying the sixteen-level enhancement, noting that "a potential source of this hesitation was the comparatively innocuous nature of Mr. Trujillo's prior conviction in Oklahoma for third degree arson." *Id*. at 817. The Oklahoma state court previously had determined that the appropriate compensation for the fire damage was only thirty-five dollars.

In its opinion, the Tenth Circuit focused on uniformity in sentencing, finding that "[t]he relatively trivial nature of Mr. Trujillo's criminal history is at odds with the substantial sixteen-level enhancement recommended by the Guidelines for this conduct." *Id*. at 819. It explained:

> The state court assessed restitution of a mere $35.00 for Mr. Trujillo's third degree arson conviction, suggesting a quite minor offense. The Guidelines, however, look only to the conviction itself rather than the actual conduct underlying the conviction. This blunter approach means that the Guidelines do not distinguish between tossing a lighted match through a car window, doing minor damage, and a more substantial crime of violence such as

>arson resulting in the complete destruction of a building or vehicle. To punish this prior conduct in the same manner could be seen to run afoul of §3553(a)(6), which strives to achieve uniform sentence for defendants with similar patterns of conduct.

*Id*. at 819-20. Considering the defendant's actual conduct, the Tenth Circuit explained that "Mr. Trujillo presents a compelling case that objective consideration of the §3553(a) factors warrant a departure, and perhaps a significant departure from the sentence suggested by the Guidelines." *Id*. at 821.

Post-*Booker*, courts have granted non-Guidelines sentences where, as in *Trujillo-Terrazas*, the actual conduct underlying the prior conviction is so trivial in nature as to be at odds with the severity of the sixteen-level enhancement. In *United States v. Perez-Nunez*, 368 F. Supp. 2d 1265 (D.N.M. 2005), an illegal reentry case decided fifteen days after *Trujillo-Terrazas*, the district court imposed a sentence below the Guideline range where the defendant's prior "crime of violence" was third-degree assault. The conviction arose from an incident in which the defendant threw a rock at the rear window of a Ford Explorer after the driver had attempted to run him over four times during a dispute over a Sony Discman. *Id*. at 1266. The defendant spent twenty-four days in jail as a result of this offense. At the time of his conviction, Colorado codified third-degree assault as a misdemeanor punishable by a term of six to eighteen months. Because the crime has an element of the knowing or reckless use of force against the person of another, however, the district court concluded that it was a crime of violence under the Guidelines and properly was subject to a sixteen-level enhancement. *Id*. at 1266-67.

In sentencing the defendant to a term of imprisonment outside of the Guidelines, the district court explained that the enhancement did not promote uniformity because the guideline

provision defining "crime of violence" is an overly broad catchall category that "subject[s] defendants convicted of everything from murder, rape and sexual abuse of a minor to simple assault, to the same 16 level enhancement in calculating the proper sentencing range." *Id*. at 1269.  The court concluded that this does not produce uniformity but rather "produce[s] a result contrary to the spirit of the Guidelines." *Id*. at 1270.

Similarly, in *United States v. Huerta-Rodriguez*, 355 F. Supp. 2d 1019 (D. Neb. 2005), the district court reduced the defendant's advisory Guidelines sentence in part because the enhancing offense -- driving while intoxicated -- was not as serious as other "crimes of violence" set forth in § 2L1.2.  "Although there is no doubt that driving while intoxicated is a serious offense, it does not involve the same level of culpability as the crimes of violence that form the basis of the steep increase in sentence under the Guidelines." *Id*. at 1030.  Although the advisory Guidelines suggested a sentence of fifty-seven to seventy-one months, the court sentenced the defendant to a term of thirty-seven months.  *Id*.

       1.    *The instant case*

Defendant merits favorable treatment under *Booker* because the actual conduct underlying his prior conviction is so trivial in nature as to be at odds with the severity of the sixteen-level enhancement applied in his case.  In 2003, in Denver County District Court, Defendant was convicted of "sexual contact -- no consent," a misdemeanor punishable by up to eighteen months in jail.  The statute defining the crime of "sexual contact – no consent," provides in relevant part: "Any actor who knowingly subjects a victim to any sexual contact commits unlawful sexual contact if:  (a) the actor knows the victim does not consent."[1]  COLO. REV. STAT. ANN. § 18-3-

---

[1] Interestingly, Defendant was charged under Colorado Revised Statute § 18-3-404(1)(a), rather than a more serious subsection of § 18-3-404, *see* COLO. REV. STAT. ANN. § 18-3-

404 (West 2001 & Supp. 2004).

On its face, application of the sixteen-level enhancement for this conviction is not particularly troubling. The underlying, undisputed[2] facts of the case, however, are troubling to the Court because they confirm the innocuous nature of Defendant's conduct. Defendant was charged after the victim's parents called the Denver Police Department to report that their daughter was being followed by an adult male at the Denver Public Library. Once the officers arrived, they spoke to the victim's parents, who informed them that they had seen Defendant talking with their daughter two weeks ago. On the day in question, they found their daughter in the parking lot with Defendant. The victim told the officer that she had met Defendant two weeks ago and that she had kept in contact with him by telephone and in person. She stated that Defendant was "kind of her boyfriend." Finally, she stated that they had "french-kissed" and held hands and that both of them wanted to engage in such behavior. Defendant confirmed the victim's story.

The Defendant's actual conduct does not justify the sixteen-level enhancement. The facts indicate that the victim in this case did, in fact, consent to the contact between herself and Defendant. Thus, the count of conviction – "sexual contact: no consent" – is a misnomer. The ultimate disposition of this case also reveals the relatively trivial nature of the offense. Defendant was sentenced only to probation. To subject Defendant to the same sixteen-level enhancement applied to defendants with prior convictions for much more serious crimes produces a nonsensical

---

404(1)(b)-(g) (West 2001 & Supp. 2004), or under § 18-3-405, which defines sexual assault on a child. This is a clear indication that the state of Colorado did not find the conduct serious enough to warrant a felony charge.

[2] The Court uses the term "undisputed" because the government did not object to the facts underlying the conviction as set forth in the PSR.

result that is contrary to the Guidelines' goals of uniformity and proportionality.

### B. The sixteen-level enhancement "double-counts" Defendant's criminal history to produce an unduly harsh result in the instant case

After *Booker*, district courts also have been critical of "double-counting" a defendant's criminal history by applying the sixteen-level enhancement in § 1326 cases. In *United States v. Galvez-Barrios*, 355 F. Supp. 2d 958 (E.D. Wisc. 2005), the district court granted a non-Guidelines sentence in part for this reason:

> It may be that severely punishing those convicted of re-entering after committing a serious felony will protect the public because such persons may reasonably be considered more dangerous. It may also be that such persons should be subject to a greater penalty as a deterrent to re-entry. Nevertheless, such justifications substantially overlap with those the Commission uses to justify increasing the defendant's criminal history score.

*Id*. at 962 (citations omitted). Thus, "[a]lthough it is sound policy to increase a defendant's sentence based on his prior record, it is questionable whether a sentence should be increased twice on that basis." *Id*. at 963.

Here, the Court finds that "double-counting" of Defendant's criminal history is overly punitive, especially because there is no indication that Defendant is a danger to society. The "sexual contact" conviction represents the entirety of Defendant's criminal history. Accordingly, "imposing a 16 level enhancement ... seems far out of proportion with any reasonable assessment" of Defendant's dangerousness or propensity to commit crimes in the future. *Id*.

### C. Section 3553(a) factors

In addition to the broader policy considerations outlined above, the Court also must consider § 3553(a) factors in formulating an appropriate sentence.

1. *The nature and circumstances of the offense*

The Court first considers the nature and circumstances of the instant offense. The offense conduct in the present case consisted of defendant's re-entry into the United States without permission after having been convicted previously of a misdemeanor. All violations of our immigration laws must be taken seriously. Defendant's case is less serious than most, however. The only aggravating factor is that defendant had previously unlawfully re-entered the country and had been removed, and thus knew that he had no legal right to be here. Furthermore, as detailed above, the facts underlying his prior conviction are fairly innocuous.

Even with a reduced sentence, Defendant will still be punished harshly. Because of his immigration status, Defendant may not be eligible for certain Bureau of Prisons programming, and must be placed, at the minimum, in a low-security facility rather than at a more relaxed "camp." Additionally, Defendant will not be eligible for early release.

2. *History and character of Defendant*

In accordance with 18 U.S.C. § 3553(a)(1), the Court is also to consider the history and characteristics of Defendant. Defendant is a twenty-nine year old Mexican man. Other than his enhancing conviction in Colorado, Defendant has no prior criminal history. There is no evidence to suggest that he is a danger to the public or to anyone else. According to the PSR, Defendant maintains a good relationship with his seven siblings and his parents. Furthermore, Defendant is in good physical and mental health.

3. *Needs of the public and any victims of crime*

Upon completion of service of his sentence, Defendant will be deported to Mexico. He has been advised that he cannot return to the United States. For this reason, Defendant does not

pose a danger to the public or the victim of his crime. As the court stated in *United States v. Ramirez-Ramirez*, "When a defendant will ultimately be removed and sent out of the country, there is less need for the sentence imposed to protect the public from further crimes of the defendant, or to provide the defendant with needed educational or vocational training." 365 F. Supp. 2d 728, 733 (E.D. Va. 2005).

        4.    *Deterrence*

Defendant understands that he cannot reenter the United States. This Court believes that he has learned his lesson and will not return. From a deterrence standpoint, then, there is nothing to be gained by sentencing Defendant to a forty-one month sentence as opposed to a fifteen month sentence. *See Perez-Nunez*, 368 F. Supp. 2d at 1269 (in granting the defendant a non-Guidelines sentence, noting that "a 57 month sentence is not likely to deter Perez-Nunez from reentering the country any more than a lesser sentence of 24 months would").

**D.**    **Imposition of Sentence**

After giving careful consideration to Defendant's case and the recommended sentence, this Court determined at the sentencing hearing that a sentence outside the advisory Guidelines was reasonable and comported with the sentencing considerations set forth in § 3553(a). Of particular importance to the Court in reaching its decision is the actual conduct underlying Defendant's prior "crime of violence." The Court finds that there is a serious mismatch between the sixteen-level enhancement and the seriousness of this conduct. Thus, the Guidelines' goal of uniformity is not advanced. "If the Supreme Court's ruling in *Booker* does anything, it gives a defendant hope that where the factors listed in Section 3553(a) warrant a lesser sentence than the Guidelines recommend, and where the Guidelines' goal of uniformity is not advanced, a judge can depart

from the sentence recommended by the Guidelines." *Perez-Nunez*, 368 F. Supp. 2d at 1270.

Defendant's enhancing offense is more akin to an aggravated felony, which, under the Guidelines, merits an enhancement of eight levels rather than sixteen levels pursuant to § 2L1.2. Using this analogy, an eight-level enhancement from a base offense level of eight leads to an adjusted offense level of sixteen. *See* § 2L1.2(a) & (b)(C). With a three-level credit for acceptance of responsibility, Defendant's total offense level would be thirteen. As a result, Defendant's advisory Guidelines range would be fifteen to twenty-one months. Using these calculations as guide posts, the Court determined at the hearing that a sentence of fifteen months was appropriate.

## CONCLUSION

At the sentencing hearing on May 25, 2005, after considering the Sentencing Guidelines, the *Booker* decision, and 18 U.S.C. § 3553(a), the Court granted Defendant a non-Guidelines sentence. The Court has enunciated its findings and the basis for the sentence in this Memorandum Opinion and Order. This Opinion and Order shall be appended to Defendant's judgment and commitment form.

**IT IS THEREFORE ORDERED** that Defendant is committed to the custody of the Bureau of Prisons for a term of fifteen months, with other conditions that appear in the judgment.

**DATED** this 21st day of July, 2005.

_____
MARTHA VÁZQUEZ
CHIEF UNITED STATES DISTRICT JUDGE

<u>Attorney for the United States</u>:
Nelson Spear
Norman Cairns

<u>Attorney for Defendant</u>:
Kari Converse